UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

MICHELE PUCKETT,

                               Plaintiff,

          -against-

THE CITY OF GLEN COVE, LEN BARON,
As Building Department Administrator of the
City of Glen Cove, and VINCENT TARANTO,
As the City of Glen Cove City Attorney,

                            Defendants.

------------------------------------------------------------------X

**MEMORANDUM AND ORDER**

CV 08-3594

(Wexler, J.)

LAW OFFICE OF STEVEN A. MORELLI, P.C.
BY: STEVEN A. MORELLI, ESQ.
Attorneys for Plaintiffs
One Old Country Road, Suite 347
Carle Place, New York 11514

SOKOLOFF STERN LLP
BY: STEVEN C. STERN, ESQ.
     KIERA J. MEEHAN, ESQ.
Attorneys for Defendants
355 Post Avenue, Suite 201
Westbury, New York 11590

WEXLER, District Judge

     Plaintiff Michele Puckett, ("Plaintiff"), a homeowner in the Village of Sea Cliff, New York, brings this civil rights action alleging that Defendants' issuance of a building permit allowing for construction of houses that block Plaintiff's previously unrestricted water view violates the Constitution. Plaintiff alleges violation of her Fourteenth Amendment Equal Protection, Procedural and Substantive Due Process rights, and her rights pursuant to the First

1

Cove.[1]

On October 12, 2006, Frog Hollow submitted to Glen Cove an application for a building

permit. Plaintiff alleges several improprieties in that application, some of which were known to

Plaintiff at the time of the application, and some of which are alleged to have been later

discovered. The alleged improprieties include: (1) the failure of the submitting architect to be

licensed by the State of New York; (2) non-disclosure as to the actual height of the structure to be

built; (3) failure to disclose a need for structural repairs on an existing structure; (4)

misstatements as to street frontage and (5) a failure to adhere to Glen Cove zoning provisions.

On November 16, 2006, the Glen Cove Zoning Board held a hearing on Frog Hollow's

application for a variance that would allow it to build. Plaintiff alleges that there was a great deal

of public sentiment against the project expressed at the meeting. That sentiment was expressed

by Plaintiff, and other residents whose water views would be blocked by the proposed

development. Additionally, the Mayor of Sea Cliff expressed opposition to the Frog Hollow

application. The Glen Cove Zoning Board concluded the first hearing by requesting additional

information from Frog Hollow.

A second hearing on Frog Hollow's application was noticed by be heard on December 14,

2006. On January 12, 2007, Frog Hollow withdrew its application, and stated that it would

revise its plans so that the proposed building would not require a variance, and construction

could then proceed as of right.

---

[1] Plaintiff's complaint includes factual allegations regarding the abandonment of
the efforts aimed to achieve Sea Cliff's approval to build. Neither Sea Cliff nor
any of its officials are named as defendants herein, and the court finds the
allegations as to this entity have no bearing on whether the named defendants
violated any of Plaintiff's rights.

3

In the months that followed, Plaintiff met, on three separate occasions, with the Mayor of Glen Cove to express her opposition to the Frog Hollow construction. She also met with Baron to state her position. During this time period, a geologic survey of the Frog Hollow property was conducted, which survey noted, according to Plaintiff, the unsuitability of the land for building. Also during this time, amendments to the Glen Cove zoning code were being prepared (the "Amendments"). According to Plaintiff, and assumed to be true at this juncture, the Amendments would have made the building proposed by Frog Hollow impossible.

On May 8, 2007, prior to adoption of the Amendments, Defendant Baron approved Frog Hollow's request for a building permit. As noted, this permit requested no variance, but was submitted based upon Frog Hollow's revised plans, which allowed it to build as of right. Despite the fact that Frog Hollow requested no variance, Plaintiff states that Baron's May 8 approval of Frog Hollow's permit was arbitrary, capricious and in retaliation to Plaintiff's expressed complaint about the project. She further states that the approval was improper because the project violated several Glen Cove zoning ordinances.

Shortly after issuance of the May 8 approval of the Frog Hollow project, building began. Thereafter, the Amendments, which took effect as of May 27, 2007, were passed. Plaintiff alleges that upon realization that the Frog Hollow building would block her water view, she "did some research" which revealed that Frog Hollow's architect was not licensed within the State of New York. Plaintiff informed both Baron and the Mayor of Glen Cove of this fact on June 7, 2007. Plaintiff states that the Mayor advised her that, in light of this impropriety, an order to stop work (the "Stop Work Order") would be issued against Frog Hollow. The Stop Work Order was signed by Baron on June 11, 2007, and thereafter served on Frog Hollow. Although construction

4

was stopped, Plaintiff claims that Baron failed to timely enforce the Stop Work Order, allowing Frog Hollow to continue construction for three additional weeks.

After issuance of the Stop Work Order, Plaintiff again met with the Mayor of Glen Cove, who agreed to retain an engineering firm to investigate Plaintiff's complaint with respect to drainage. Plaintiff alleges, upon information and belief, that after the engineering firm retained by the Mayor submitted an oral report that was unfavorable to Frog Hollow, Baron retained a second engineering firm. That firm, stated by Plaintiff to be "conveniently located on the same street as Glen Cove City Hall," issued two reports to Baron. Presumably, the second report approved continued building, because Plaintiff questions the veracity of that report, stating that it was influenced by Baron's presence during the inspection.

On July 27, 2007, an attorney for Plaintiff's neighbor asked Baron to revoke the May 8, 2007, building permit issued to Frog Hollow. The request was based upon the alleged non-compliance of the Frog Hollow project with the Amendments (which took effect as of May 27, 2007). At or around this time, Glen Cove revoked the Frog Hollow building permit because of the impropriety of its architect's license. Frog Hollow, which was now faced with the necessity of complying with the Amendments, submitted an application to continue building under a "hardship exception" to the Glen Cove City Code. The hardship exception request was based upon the argument that the extent to which the construction had progressed would make compliance with the Amendments a hardship.

A public hearing on Frog Hollow's application for the hardship exception was scheduled for August 9, 2007. That hearing, however, was cancelled. According to Plaintiff, the cancellation took place because of a view expressed by a Zoning Board member that Frog

5

Hollow should be required to submit a new application for a permit.

At this point in the process, Defendant Taranto became involved. Acting in his capacity as City Attorney, Taranto gave advice to Baron and the Zoning Board. He expressed the opinion that the Amendments were invalid because Glen Cove failed to properly notify neighboring municipalities of the Amendments when they were first passed. It was the opinion of Taranto that the Amendments had to be repealed and re-adopted to be valid. Thereafter, Frog Hollow submitted a second request for a building permit. In light of the invalidity of the Amendments, that request, like the initial request, sought no variance or hardship exception, and instead, requested a permit to build as of right. Frog Hollow's request was granted and a permit to build was issued on August 10, 2007. Plaintiff argues that this permit violates provisions of the Glen Cove Zoning Code as well as the law of the State of New York. Upon issuance of the August permit, Frog Hollow re-commenced construction, eventually constructing homes. Plaintiff alleges that, as a result of this construction, "Plaintiff's view of the water is now and will forever be substantially blocked by the mammoth nonconforming home."

On October 4, 2007, Plaintiff commenced a proceeding, pursuant to Article 78 of New York's Civil Practice Law and Rules (the "Article 78 Proceeding"), demanding that the Frog Hollow construction be stopped. Defendants in the Article 78 Proceeding moved to dismiss the action for failure to exhaust administrative remedies. On February 15, 2008, the state court justice to whom the Article 78 Proceeding was assigned, dismissed the petition on the grounds set forth by defendants therein.

Plaintiff's amended complaint contains additional factual allegations, most of which allege additional reasons why Glen Cove was wrong in making the decision to allow the Frog

6

Hollow construction. These allegations refer to various violations and misinterpretations of the Glen Cove Building Code, improprieties regarding the publication of notice regarding the passage of the Amendments, attorney Taranto's statements at public hearings regarding his interpretation of the law, and a DEC investigation of the soil on the Frog Hollow property. As to the results of the soil study, it is clear that the investigation revealed no threat to the public safety.

II.     Plaintiff's Claims

Plaintiff characterizes Frog Hollow as having gone "out of its way" to ensure it would obtain approval to build, and did so "to the detriment of Plaintiff throughout the application process." She states that as a result of Defendants' actions she has sustained damages and injuries including the loss of enjoyment of her property, embarrassment, humiliation, economic, emotional and psychological injuries. Plaintiff sets forth six civil rights causes of action, pursuant 42 U.S.C. § 1983 ("Section 1983") as follows.

First, Plaintiff alleges a violation of her Fourteenth Amendment right to Equal Protection of the law. In support of this claim, Plaintiff alleges selective enforcement of Defendants' laws, to the benefit of Frog Hollow, and to the detriment of Plaintiff. The treatment of Frog Hollow is alleged to have been "intentional, conducted with bad faith, wholly irrational and arbitrary . . . ." The disparate treatment is alleged to include the issuance of building permits by Glen Cove and Baron in violation of the building Code, and the untimely posting of the Stop Work Order by Baron.

Plaintiff's Substantive Due Process claim alleges deprivation of this right by the arbitrary issuance of Frog Hollow's building permit in violation of the Glen Cove Building Code. The Procedural Due Process claim similarly alleges deprivation based upon the grant of the August

7

10, 2007, building permit in violation of the Glen Cove Building Code, and procedures requiring public hearings. Plaintiff alleges a violation of her First Amendment rights in the form of a retaliation claim. Specifically, Plaintiff claims that the Frog Hollow building permit was issued in retaliation of Plaintiff's expressed opposition to the project.

Plaintiff's final two causes of action allege the existence of a conspiracy among Defendants to deprive Plaintiff of her Constitutionally protected rights, and a custom and practice of such deprivation. While not expressly stated, this latter claim appears to set forth a municipal liability claim pursuant to Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978) (imposition of civil rights liability upon a municipality, requires proof that the deprivation of constitutional rights was caused by a municipal "policy" or "custom"); see also Wimmer v. Suffolk County Police Dep't., 176 F.3d 125, 137 (2d Cir. 1999).

III.    Defendants' Motions to Dismiss

Defendants move to dismiss all of Plaintiff's claims. Dismissal of the claims as to the individual Defendants Baron and Taranto is sought on the ground of qualified immunity. Dismissal of the Equal Protection claim is sought on the ground that Plaintiff can show neither that she was treated differently from any similarly situated homeowner, nor that any acts of Defendants were based upon any impermissible consideration, including malicious or bad faith intent to injure. Dismissal of Plaintiffs' Due Process claims is sought on the grounds that Plaintiffs can show neither a valid property right to the denial of the Frog Hollow building permit, nor that she was denied the opportunity to be heard. The Substantive Due Process claim is similarly sought to be dismissed be because Plaintiff alleges no Constitutionally protected right and, in any event, the alleged actions of Defendants do not rise to the level necessary to support

8

such a claim. Finally, Defendants seek dismissal of the First Amendment claim on the ground that the facts, as set forth by Plaintiff, show no deprivation of any right of access to government officials.

After outlining the applicable legal principles the court will consider the merits of the motion.

DISCUSSION

I.    General Principles

     A.    Standards For Motion to Dismiss

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974.

The "plausibility" language used by the Supreme Court in Bell Atlantic, has not been interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.* " Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir.2007) (emphasis in original). Further, courts have noted that while heightened factual pleading is not the new order of the day, Bell Atlantic holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint

9

are true (even if doubtful in fact)." <u>Williams v. Berkshire Fin. Grp. Inc.</u>, 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1959.

In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. <u>Watts v. Services for the Underserved</u>, 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974. While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing the lawsuit. <u>See Brass v. Amer. Film Techn., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993); <u>Watts</u>, 2007 WL 1651852 *2. With these principles in mind, the court turns to the merits of Defendants' motions.

B.     The Section 1983 Claims: General Principles

To state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), plaintiff must show a deprivation of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983; <u>Sykes v. James</u>, 13 F.3d 515, 519 (2d Cir. 1993). The constitutional rights alleged to have been violated here are Plaintiffs' Fourteenth Amendment rights to Equal Protection, Due Process and the First Amendment.

II.     Equal Protection Claim

A.     Legal Principles

The Fourteenth Amendment right to Equal Protection of the Law is "essentially a

direction that all persons similarly situated be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Disabled American Veterans v. United States Dep't of Veterans Affairs, 962 F.2d 136, 141 (2d Cir. 1992). While an equal protection claim may be based upon the allegation that plaintiff was a victim of discrimination due to membership in a protected class, Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995), the right to equal protection also extends to individuals who allege disparate treatment based upon ill will, or without rational basis. Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). To establish an equal protection violation in a zoning context, a plaintiff must show treatment different from other similarly situated individuals. Harlen, 273 F.3d at 499. Similarity is generally a factual issue for a jury. That rule is "not absolute, however, and a claim can be subject to summary dismissal where no rational jury could find similarity." Harlen, 273 F.3d at 499 n. 2.

In addition to a showing of similarity, Plaintiffs must also show either that the disparate treatment: (1) was based upon "'impermissible considerations," including the "malicious or bad faith intent to injure," or (2) was wholly irrational or arbitrary. Harlen, 273 F.3d 500, see Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005); see also Village of Willowbrook v. Olech, 528 U.S. 562 (2000). The latter type of equal protection claim focuses on whether the conduct of the local official was rationally related to his work. In the zoning context, a decision can be considered irrational only when defendant acts "with 'no legitimate reason for its decision.'" Harlen, 273 F.3d at 500, quoting, Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996).

B.     Sufficiency of the Equal Protection Claim

Plaintiff is not, and does not argue to be, a member of any suspect or identifiable class.

11

Instead, she alleges a violation of her equal protection rights based upon an allegation of selective enforcement of Defendants' laws, to the benefit of Frog Hollow, and to the detriment of Plaintiff. Such enforcement is alleged to have been arbitrary.

As noted, an Equal Protection claim is stated only by showing substantial similarity, coupled with disparate treatment that is either arbitrary or motivated by ill will. As a homeowner, Plaintiff is obviously not similarly situated to Frog Hollow, an entity seeking a building permit. The court generously interprets Plaintiff's amended complaint to allege either: (1) that she was treated differently from similarly situated homeowners, or (2) that Frog Hollow was treated differently from similarly situated builders. Neither theory, however, states a claim here.

As to the first theory, the court notes that the amended complaint, despite its detailed factual allegations, nowhere alleges that Plaintiff was treated differently from other homeowners. Indeed, the allegations tend to show the favorable treatment of Plaintiff. As set forth in the amended complaint, Plaintiff was granted substantial access to government leaders. She met on three separate occasions with the Mayor of Glen Cove, and several times with Defendant Baron. There is no allegation that other homeowners were more favorably treated than Plaintiff.

Any theory that Frog Hollow was treated differently (in Plaintiff's view more favorably) than other similarly situated builders, is similarly lacking. Plaintiff's amended complaint contains no factual allegation supporting a claim that other similarly situated builders were treated differently, and, according to Plaintiff, less favorably than Frog Hollow. While Plaintiff claims that Frog Hollow "went out of its way" to obtain approval, there is nothing sinister or illegal about pursuing the right to build on one's property. Plaintiff's factually detailed amended

12

complaint does not contain so much as a hint that Frog Hollow was treated any more favorably than any other builder seeking a permit.

Even the most liberal interpretation of Plaintiff's pleading reveals that she alleges only that, as between Plaintiff and Frog Hollow, the latter was treated more favorably. Facts such as these fail, as a matter of law, to state an Equal Protection violation. Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir. 1994) (allegations that municipal defendants "preferred the interests" of builder over those of the nearby resident fail to state an equal protection claim "as a matter of law."). In sum, since an Equal Protection analysis does not focus on whether two dissimilar individuals or entities are treated the same, Plaintiff's claim must fail.

Even if Plaintiff were to come forward with information showing similarity, either with other homeowners (if arguing disparate treatment as to those similarly situated to Plaintiff) or similarity to other builders (if arguing disparate treatment as to those similarly situated to Frog Hollow), her claim would still fail. This is because Plaintiff cannot show any such treatment: (1) was based upon "'impermissible considerations," including the "malicious or bad faith intent to injure," or (2) was wholly irrational or arbitrary. Harlen, 273 F.3d 500, see Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005); see also Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

The branch of an Equal Protection claim that questions whether defendants acted with malice or arbitrarily, focuses on whether the conduct of the named defendants was rationally related to their work. A zoning decision can be considered irrational only when a board acts "with 'no legitimate reason for its decision.'" Harlen, 273 F.3d at 500, quoting, Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996). The detailed allegations of the amended complaint make clear that Defendants investigated Plaintiff's complaints, and acted pursuant to legal advice

13

when granting the Frog Hollow permit to build. Under these circumstances, it cannot be said that Defendant's zoning decision violated the Equal Protection clause of the Constitution. For the foregoing reasons, Plaintiff's Equal Protection claim must be dismissed.

III.    Due Process Claim

      A.    Legal Principles

Plaintiff claims denial of both her procedural and substantive due process rights.

To demonstrate a violation of due process rights based upon a zoning decision, whether procedural or substantive, a plaintiff must first demonstrate the possession of a federally protected property right to the relief sought. See Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12,16 (2d Cir. 1999); Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999); Penlyn Development Corp. v. Incorporated Village of Lloyd Harbor, 51 F. Supp.2d 255, 261 (E.D.N.Y. 1999). It is only when such a right is established that the court may turn to a discussion of the second prong of the due process analysis, i.e., the sufficiency of any state remedy (in the context of a procedural due process claim), see Hellenic American Neighborhood Action Committee v. City of New York, 101 F.3d 877, 881-82 (2d Cir. 1996); Whiting v. Incorporated Village of Old Brookville, 8 F. Supp.2d 202, 211 (E.D.N.Y. 1998) or, the nature of defendant's conduct (in the context of a substantive due process analysis), see Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996). As to the former, the availability of the Article 78 proceeding has been held to provide homeowner plaintiffs with all of the procedural due process rights to which they were due. See Hellenic, 101 F.3d at 881-82. As to the latter, substantive due process rights are violated only by conduct "so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale, 170 F.3d at 263. While Section 1983 is often used as

14

a vehicle to challenge local land use decisions, federal judicial review of these decisions is extremely deferential. As often stated, federal courts hearing civil rights cases do not sit as zoning boards of appeal over local zoning decisions. Natale, 170 F.3d at 263, quoting, Village of Belle Terre v. Boras, 4167 U.S. 1, 13 (1974) (Marshall, J., dissenting). The mere violation of state zoning laws is not sufficient to demonstrate conduct so outrageous as to violate the substantive component of the due process clause. Natale, 170 F.3d at 262. Indeed, even a state court ruling that state zoning laws have been violated is not, standing alone, sufficient to constitute a substantive due process violation. RRI Realty v. Incorporated Village of Southampton, 870 F.2d 911, 912 (2d Cir. 1989).

I.     Constitutionally Protected Right

A protected property interest may, in limited circumstances, include the right to use one's land in a certain way. In such cases a "right," such as a right to a permit or a change in zoning, may constitute a protected property right, the denial of which implicates the protections of the due process clause. RRI Realty, 870 F.2d at 915. Such a property right exists, however, only if the plaintiff can show a "clear entitlement" to the relief sought, Natale, 170 F.3d at 263; a mere "abstract need or desire" is insufficient. RRI Realty, 870 F.2d at 915, quoting, Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

The question of entitlement turns on whether the local authority has discretion to deny what is sought or, in the alternative, whether relief must be granted based upon objectively ascertainable criteria. Where discretion is present there can be no entitlement. Natale, 170 F.3d at 263; Cathedral Church of the Intercessor v. Incorporated Village of Malverne, 353 F. Supp.2d 375, 384 (E.D.N.Y. 2005). The issue to be examined is not merely whether the rejection of

15

plaintiff's application was arbitrary and capricious. Instead, the issue is whether, in the absence of the alleged due process violation, there would have been "either a certainty or a very strong likelihood that the application would have been granted." RRI Realty, 870 F.2d at 917, quoting, Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir. 1985).

The Yale Auto Parts "entitlement" test is applied with "considerable rigor." RRI Realty, 870 F.2d at 918. Most important to consider is the degree of discretion afforded the local authority, rather than the "estimated probability" of favorable action upon plaintiff's application. Id. Even if "objective observers would estimate that the probability of [obtaining the relief sought] was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." RRI Realty, 870 F.2d at 918. A protected property interest will be found only if the degree of discretion afforded the local authority is so narrow that approval is "virtually assured." Id.

The issue of whether a protected property interest exists is a mater of law for the court to decide. Id. Although the presence of discretion will almost certainly defeat the finding of a protected property interest, every application that might somehow be the subject of a discretionary decision is not removed from constitutional protection. Thus, while the standard is rigorous, a "theoretical possibility of discretionary action does not automatically" remove the action sought from the realm of the protected property interest. Sullivan v. Town of Salem, 805 F.2d 81, 85 (2d Cir. 1986).

Because the court considers the property right issue as a threshold matter, a civil rights due process claims may be rejected without the necessity of exploring the second prongs of the due process analysis. See, e.g., Crowley, 76 F.3d at 52. Specifically, in cases where there is no

16

"entitlement," and therefore no protected property interest, it will matter not how the regulator's actions are characterized. The case may be dismissed at the outset based upon the lack of a constitutionally protected property interest. RRI Realty, 870 F.2d at 918. With these principles in mind, the court turns to consider whether Plaintiff's amended complaint alleges the deprivation of a Constitutionally protected right.

B.    Sufficiency of the Due Process Claim

In a typical due process case involving the use of one's land, the Plaintiff argues a right to obtain a building permit. In this case, however, the protected property right or "entitlement," forming the basis of Plaintiff's due process claims is not a right to build on her own land, but is either: (1) a right to an unobstructed water view, or (2) a right to prohibit a nearby landowner from building on his land. Neither right exists under the Constitution.

First, as to Plaintiff's water view, even Plaintiff admits there is no such right found in the Constitution. Even if Plaintiff were to pursue such a claim, it is clear that no such right exists since "[a] person cannot claim a constitutionally protected property interest in uses of neighboring property on the ground that those uses may affect the market value of [plaintiff's] property." Mehta v. Surles, 905 F.2d 595, 598 (2d Cir. 1990). Indeed, the Second Circuit has held clearly that "governmental action causing a decline in property values has never been held to 'deprive' a person of property within the meaning of the Fourteenth Amendment." Fusco v. State of Connecticut, 815 F.2d 201, 205-06 (2d Cir. 1987), quoting, BAM Historic District Association v. Koch, 723 F.2d 233, 237 (2d Cir. 1983).

Nor, the court holds, has Plaintiff stated a property right in the prohibition of the granting of a building permit to Plaintiff's neighbor. Defendant's discretion in the permit process negates

17

any holding that a property right to such a grant or denial exists. There can be no question but that Defendants possessed the discretion to grant or deny the permit sought by Frog Hollow. This discretion negates the argument that Plaintiff has a constitutionally protected property interest in the denial of a permit to her neighbor. Because Plaintiff cannot show a constitutional entitlement to the denial of the Frog Hollow permit, she cannot state a claim for either a procedural or substantive due process violation.

The foregoing holding makes it unnecessary to reach the questions of the sufficiency of state procedures and/or whether or not the acts alleged rise to a level sufficient to find a violation of substantive due process. In any event, the court holds that Plaintiff can prevail on neither argument. First, the availability of an Article 78 proceeding has been held to provide homeowner plaintiffs with all of the procedural due process rights to which they are due. See Hellenic, 101 F.3d at 881-82. As to the acts alleged here, neither the grant of a neighbor's building permit, nor reliance on advice of the City's counsel regarding the legality of the Amendments can support a claim of a substantive due process violation.

For the foregoing reasons, the court dismisses Plaintiff's due process claims.

IV.     The First Amendment Claim

        A.      Legal Principles

The parties disagree as to the appropriate standard to apply when determining whether a pleading contains the elements necessary to state a First Amendment retaliation claim.

According to Plaintiff, a pleading survives dismissal if it alleges: (1) that plaintiff engaged in conduct protected by the First Amendment, and (2) "that the speech was a substantial or motivating factor in an adverse decision taken by the defendant." Beechwood Restorative

18

Care Center v. Leeds, 436 F.3d 147, 152 (2d Cir. 2006); Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.2d 83, 91 (2d Cir. 2002); Gagliardi, 18 F.3d at 194; see also C.J. Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) (listing elements as: (1) plaintiff's protected activity; (2) adverse action taken against plaintiff and (3) causal connection between speech and adverse action)).

Defendants take the position that, in addition to the two elements set forth by Plaintiff, there is a third element necessary to state a claim. Specifically, Defendants allege that a First Amendment retaliation claim must also allege that the plaintiff's speech was actually chilled. See Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

The court recognizes that certain First Amendment retaliation cases have imposed the requirement of alleging this additional "actual chilling" requirement. The court holds however, that such chilling need not be alleged to state a claim here.

The Second Circuit has explained that the elements required to plead a First Amendment retaliation claim depend upon the factual context. Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008) see Richardson v. New York City health and Hosp. Corp., 2009 WL 804096 *19 (S.D.N.Y. 2009). Chilling is required to be alleged only in cases where a plaintiff states no harm independent of the chilling of speech. Gill v. Pidlypchak, 389 F.3d 379, 383 (2d Cir. 2004). In Gill, the Second Circuit described the situation in Curley, relied upon by Defendants as setting forth the appropriate standard, as one where a plaintiff complaining of First Amendment retaliation claims the chilling effect on speech as his sole injury. Gill, 389 F.3d at 381. In such a case, the plaintiff must allege that chilling effect to state a claim. On the other hand, where the retaliation is alleged to have caused an injury separate from any chilling effect,

19

such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim. See, e.g., Morrison v. Johnson, 429 F.3d 48, 51 (2d Cir. 2005) (public employee alleging retaliation need allege only: (1) protected speech; (2) adverse employment action and (3) that the speech was a motivating factor in the decision to take the adverse action); Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004) (same).

When recognizing the different pleading standards that apply to different factual settings, the Second Circuit referred to the Gagliardi pleading standard, relied upon by Plaintiff, as appropriate for the factual scenario in that case. Notably, Gagliardi raised strikingly similar facts to those presented here. There, the homeowners alleged that Defendants' failure to enforce the Town Code against a neighbor, and other acts of misconduct were undertaken in retaliation for the plaintiffs' exercise of free speech. Gagliardi, 18 F.3d at 194. The Second Circuit in Gill noted that the Gagliardi plaintiffs' pleading survived a motion to dismiss because they pleaded that they: (1) engaged in protected conduct and (2) alleged that defendants' conduct was motivated by the plaintiffs' speech. The court explained that no chilling effect was required to be shown because plaintiffs alleged injury independent of chilled speech. Gill, 389 F.3d at 383; see also Beechwood, 436 F.3d at 152 (claim that defendant revoked plaintiff's operating certificate in retaliation for exercise of speech held to require pleading only of protected speech and that speech was a motivating factor in defendant's decision); Dougherty, 282 F.2d at 90 (claim that permit revocation decision was made in retaliation for exercise of speech held to Gagliardi pleading standard).

The foregoing discussion makes clear that the facts presented dictates the elements to be pled when alleging First Amendment retaliation. Since the facts here are substantially similar to

those alleged in <u>Gagliardi</u>, the court holds that the pleading requirement established in that case applies here, and Plaintiff need not plead not prove actual chilling of speech for her complaint to survive a motion to dismiss. The court turns then to consider the sufficiency of Plaintiff's pleading.

B.    Sufficiency of the First Amendment Claim

Plaintiff must first allege that she engaged in protected activity to state a First Amendment claim of retaliation. The First Amendment protects the right of access to the courts, and an individual's right to complain to public officials. <u>Lewis v. Casey</u>, 518 U.S. 343, 350 (1996) (right of access) ; <u>Monsky v. Moraghan</u>, 127 F.3d 243, 246 (2d Cir. 1997) (right of access); <u>Patriots Way, LLC v. Marconi</u>, 2007 WL 988712 *4 (D. Conn. 2007); <u>see</u> <u>Colondres v. Scoppetta</u>, 290 F. Supp.2d 376, 381 (E.D.N.Y. 2003) (right of access is "bound up" with the First Amendment right to petition the government); <u>Gagliardi</u>, 18 F.3d at 194-95 (right to complain to public officials protected by First Amendment). These First Amendment rights include the right to be free from retaliation for their exercise. <u>Colondres</u>, 290 F. Supp.2d at 382; <u>see</u> <u>Patriots Way</u>, 2007 WL 988712 *6. Because Plaintiff has a First Amendment interest in stating her concerns regarding land use decisions, this prong of her retaliation claim is stated.

The second prong of the First Amendment claim, which concerns Defendants' motivation, is whether Defendants' conduct was substantially motivated by Plaintiff's exercise of speech. This question is not one that can be decided in the context of a motion to dismiss. As noted by the Second Circuit in <u>Gagliardi</u>, a case factually on point, "[t]he ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint." <u>Gagliardi</u> 18 F.3d at 195. Such matters are required only to be "averred

21

generally" in a complaint, and need not be pled with specificity. Fed. R. Civ. P. 9(b). Finally, to the extent that Gill interprets Gagliardi to require that Plaintiff plead injury, the amended complaint meets this requirement. Plaintiff alleges injury to the value of her property as well as other injuries.

In view of the liberal pleading standard as set forth in Gagliardi, the court declines to dismiss the First Amendment retaliation claim at this point, and will allow for discovery to proceed as to this remaining claim. The court's unwillingness to dismiss the claim in the context of this motion addressed to the pleadings should not be construed to indicate that the claim will succeed. The facts alleged in the amended complaint tend to show that Plaintiff was afforded extraordinary access to public officials in stating her position. The motivation of those officials in granting the Frog Hollow permit is the only question precluding judgment in Defendants' favor at this time.

V.      Other Matters

In light of the fact that discovery is proceeding with respect to the First Amendment claim, and the consequence that this case will be decided either at trial, or in the context of a motion for summary judgment, the court will defer at this time, a ruling as to the issue of qualified immunity. As to qualified immunity on the remaining First Amendment claim, the court notes that Plaintiff will be required to show the violation of clearly established law, and also that the conduct of the individual defendants was not objectively reasonable. See Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998); Blue v. Koren, 72 F.3d 1075, 1083-84 (2d Cir. 1995). Unlike this motion to dismiss, in the context of a motion for summary judgment, Plaintiff will be required to come forward with more than conclusory statements as to the individual Defendants'

22

improper motivation when making the decision to grant Frog Hollow's building permit. Defeat of the qualified immunity defense raised in a summary judgment motion will require Plaintiff to "offer specific evidence of improper motivation." Blue, 72 F.3d at 1083-84; see Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). If the grant of the Frog Hollow permit was "objectively reasonable, a conclusory proffer of an unconstitutional motive should not defeat a motion for summary judgment." Blue, 72 F.3d at 1084.

In light of the procedural posture of this case, however, the court will not decide the qualified immunity issue now, but will allow discovery to proceed as to the First Amendment claim. The qualified immunity issue, as well as any issue regarding municipal liability, may be raised by Defendants after discovery.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the complaint is granted to the extent that Plaintiff's Equal Protection and Due Process claims are dismissed. The First Amendment retaliation claim may proceed to discovery. Counsel are directed to contact the assigned Magistrate Judge for the purpose of setting up an appropriate discovery schedule. The Clerk of the Court is directed to terminate the motion to dismiss.

SO ORDERED

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
June 30 , 2009

23